No. 12,635.

## G. W. SENTELL & CO. vs. J. E. HEWITT ET ALS.

There was not a partnership liability of stockholders even if, as contended by plaintiffs, the corporation of which the defendants were stockholders was a defective and illegal corporation, for the reason that the plaintiffs had notice of the stipulation to secure limited liability of the stockholders and contracted their debt with reference to the limited liability of three of the defendant stockholders.

Plaintiffs carried defendants' policitation into effect and received actual benefits therefrom.

The law points out no special form of acceptance of a policitation. Performance of the condition upon which the offer is made and benefits derived from the transaction are acceptance enough, and concludes the one accepting from recovering more than the limited liability proposed when the proposal was made, and to which no objection was ever made by plaintiffs while it was being carried out.

APPEAL from the Ninth Judicial District Court for the Parish of De Soto. *Hall, J.*

*J. D. Wilkinson* and *Wm. Goss* for Plaintiffs, Appellants.

*Elam & Egan* and *Lee & Liverman* for Defendants, Appellees.

Argued and submitted December 17, 1897.
Opinion handed down January 10, 1898.

The opinion of the court was delivered by

BREAUX, J. Plaintiffs sued the defendants for balance of an account for goods sold to the late firm of J. E. Hewitt & Co.

Plaintiffs alleged that the firm had not been legally incorporated and that in conseqnence the members of the firm were *in solido* indebted for the firm's debts, and that they were not as they claimed indebted as a corporation.

The defendants interposed the pleas of misjoinder, of estoppel and of prescription.

The pleas of prescription and misjoinder were overruled, and the plea of estoppel was referred to the merits. In their answer three of the defendants severed from J. E. Hewitt, their co-defendant. They alleged in their answer that there was an agreement entered into between Hewitt and plaintiffs giviog consent to a limited liability in so far as they were concerned, as expressed in the charter of their company, which had been submitted to them by Hewitt in order to secure the limited liability.

Defendants' plea of misjoinder was based on an asserted valid incorporation of defendants' firm. In that case it followed (they pleaded) that the company limited alone was to be sued, and not the shareholders of the company personally.

The plea of estoppel was grounded upon the alleged assistance and participation of plaintiffs in the organization of the J. E. Hewitt & Co., Limited.

The defendants averred their dealings with the company; and their (plaintiffs') profits resulting from their common business. The act of incorporation of the J. E. Hewitt & Co., Limited, now assailed by plaintiffs, sets forth properly the name of the corporation, also its domicile; the period for which organized, and during which it was to have and enjoy succession.

The object in forming the company was stated. It was authorized to have a corporate seal; to contract, sue and be sued, to hold real estate, to mortgage and accept mortgage, and do all other needful acts.

In the charter it was recited that the capital stock was not to exceed twenty thousand dollars, and the amount of the shares was fixed at five hundred dollars each; the election of a general manager was left to the stockholders, upon whom citations or other legal processes were to be served. This charter was duly made public and it was duly inscribed in the clerk's office. The objection to the charter is that no subscription list of shareholders was ever made or, at any rate, that none was ever recorded.

In support of their pleas defendants introduced several letters in evidence, and among them one written in the latter part of 1888 to plaintiffs by J. E. Hewitt, enclosing a copy of the charter and informing the plaintiffs that he had seven thousand dollars paid in, and that he was investing that amount for the corporation in paper secured by mortgage which he would forward and deposit with plaintiffs under their agreement.

In another letter also in evidence, written a few days after the one just noted, the writer, J. E. Hewitt, requested the plaintiffs to open an account with J. E. Hewitt & Co., Limited. They complied. He also in this letter to them represented that in transforming the firm of J. E. Hewitt & Co. into a corporation limited, he did not intend to avoid personal responsibility and he expressly waived all limitation of responsibility and wrote that he would hold himself bound for all debts of the corporation limited. He added in the letter, " Of course this does not apply to my associates, or to any other creditors except yourselves. By limiting their liability to what they put in, I am able to handle considerable of my friends' money at a low rate of interest, and while I will secure you from loss with it by investing it in small but safe loans I will build up an almost invincible support and enable me to control the trade for the Farmers' Supply Company and the cotton for you.

" The supply company is doing a rattling business and small stock as yet, but I think its trade will be immense. It sells for cash and turns the cash over to me every Saturday night. I am determined to make the supply company and allow shipments a complete success and profitable to you and all parties concerned."

Judgment was rendered against J. E. Hewitt for the amount claimed. The demand against the other defendants was rejected. Plaintiffs' appeal from the judgment rejecting their demand against the defendants other than Hewitt.

We gather from the evidence that the firm of J. E. Hewitt & Co. secured from the plaintiff money with which the latter in a manner pursued a banking business. In accepting pledges for money and supplies advanced on crops, the borrower expressly agreed to ship the cotton pledged to plaintiff. As we interpret the facts, the firm of Hewitt & Co., Limited, was bound, as a matter of good faith, to ship all the cotton it purchased with funds advanced by plaintiff and all the cotton it controlled to plaintiffs. The result was that many thousand bales of

cotton were shipped through the management of J. E. Hewitt & Co. to Sentell & Co. At the beginning of the discussion we will take it for granted that no one will deny that both the plaintiffs and the firm of J. E. Hewitt & Co., Limited, were free agents and capable of contracting.

The extent the defendants, if they were partners, could limit their liability is one of the questions before us for determination.

A creditor of a partnership, it will not be denied, may release one of the members of a partnership with the consent of the others, and without thereby discharging the latter.

That proposition being settled, we have not succeeded in discovering a good reason why a partner may not, as in this case, offer to hold himself bound to creditors accepting for the whole of the liability of the partnership to be incurred for loans or advances, with the understanding that the liability of his partner shall be taken as limited. The current of authorities sustains the view that it is possible to thus contract.

There is here no question of private stipulation between the partners. The plaintiffs had more than a distinct notice of a limit of liability. It was a stipulation. The promoter of the corporation or partnership, as the case may have been, made application directly to plaintiff for the wherewith to carry out his plan, and stated that part of the amount he needed, could only be obtained on the condition of limited liability contained in the charter, which he, however, waived to the extent that he was personally concerned. The condition was a possible condition and the waiver a possible waiver. There was nothing in the stipulation in violation of a prohibitory law or repugnant to public policy or morals.

"There is certainly nothing illegal in a creditor agreeing to such a limited responsibility as a qualification or limitation of his contract." Story on Partnership, par. 165.

The civilians of old affirmed that members of partnership may limit their responsibility. Cooper's Justinian.

Such stipulations have always been looked upon as possible. 3d Kent, par. 26.

As relates to questions of usurping and attempting to exercise the proper functions of a corporation, which the Legislature or government alone is competent to establish or the wanton disregard of the forms pointed out by law (Story on Partnership, par. ——), while

it is claimed that there was failure to organize properly under the law we do not understand that plaintiffs question the good faith of Hewitt & Co., Limited, in their attempt to effect a legal organization.

Again, limited liability clauses such as that here can have no effect as relates to the interest of strangers.

But in the case before us for determination, not only plaintiffs had notice of the stipulation entered into with the view of limiting personal responsibility, but they in addition, as we gather from the facts, carried defendants' policitation into effect, and during several years continuously derived therefrom income and profit.

From this point the question resolves itself into one of acceptance on the part of plaintiffs.

With reference to acceptance *vel non* the law points out no particular form of acceptance. Laurent, upon that subject, gives effect to the maxim: *Eadem vis est tacite atque expressi concensus.* Vol. 15, par. 482.

The views of Baudry-Lacantinerie are similar, par. 798, Vol. 2.

A decision of this court, in our judgment, bears upon the point.

" A policitation becomes often the basis of a contract. It requires, in order to be ripened into a perfect contract, the acceptance of the party to whom it is made. The offer, it was held, had been accepted, the one accepting having actually assumed to do the work offered upon stated conditions. Seal vs. Erwin, 2 Martin, N. S. 246.

Here plaintiffs did not accept the terms offered, by doing work offered to them to be done, but by advancing money, the representative of work or *quid pro quo* for work. Moreover, they received actual benefits from the effects of which, it does appear to us, they can now be released without its being contrary to the plainest principles of reason and justice. We are well aware that stipulations of the kind here discussed are not looked upon favorably, and that to sustain them they require that the creditor shall have more than ordinary notice. We are of the opinion, after having given our most attentive consideration to the question, that the case here comes strictly within the plain intent, terms and meaning of the exception, for the reason that policitation had been in effect accepted and acted upon by all parties concerned.

The counsel for plaintiff, in their brief, have made clear and fair abbreviations of the following decisions:

Lynch vs. Portlewaite, 7 M. 70; Lambert vs. Voliter, 6 R. 128;

Cooley vs. Broad, 29 An. 345, in which, as we appreciate those decisions, it was held that mere notice to the creditors was not sufficient to sustain a claim of limited liability of partners.

In the case before us for decision, we have found that there was considerably more than mere notice, and in consequence, in our view, decisions regarding the effect of notice have not the bearing claimed by counsel.

The conclusion at which we have arrived regarding plaintiff's acceptance of the defendant's business, with attending conditions, renders it unnecessary for us to pass upon the other points raised in the case.

It is therefore ordered and adjudged that the judgment appealed from is affirmed.